# In the Matter of the Estate of Marc R. Beauregard.

Middlesex. December 7, 2009. - February 22, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Will,* Revocation. *Evidence,* Presumptions and burden of proof.

A probate judge, in dismissing a petition for probate of a copy of a will, did not err in applying the evidentiary presumption that the testator had destroyed the original (which had been in the testator's possession but could not be located after his death) with the intent to revoke it, and the will opponents were not required to raise the presumption in their pleadings or at trial; further, the judge did not err in finding, based on the competency of the defendant and the temporal proximity of the creation of the will and the testator's death, that the will proponent had not overcome the presumption by a preponderance of the evidence. [162-165]

Petition filed in the Middlesex Division of the Probate and Family Court Department on August 21, 2003.

The case was heard by *Edward F. Donnelly, Jr.,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Erich J. Bryant (Richard J. Ahern* with him) for the petitioner.

*Francis T. Talty (Michael Talty* with him) for the administrator.

Marshall, C.J. Steven D. Knight appeals from a decree of the Probate and Family Court dismissing his petition for probate of the will of Marc R. Beauregard (decedent). The decedent died at the age of forty years, unmarried and childless, leaving his parents as his sole heirs and next of kin. After his death on July 19, 2003, a judge in the Probate and Family Court appointed Raymond L. Beauregard (Beauregard), the decedent's father, as administrator of his estate. Subsequently Knight, who had the same residential address as the decedent, filed a petition for probate of a "copy of a will." He contended that a document dated June 11, 2003, which bequeathed significant assets to Knight, was a copy of the decedent's last will and testament. Beauregard, the decedent's mother, and his four siblings filed

objections to the petition.[1] Following various pretrial proceedings, an evidentiary hearing was held during which the June 11, 2003, document was entered in evidence. All parties agreed that no original will could be located.

The trial judge found that the decedent had executed a will on June 11, 2003, and had himself retained the original. Despite the objectors' contention that the will was a forgery or not properly executed, the judge found that the will had been witnessed by two persons in accordance with G. L. c. 191, § 1, and was otherwise proper.[2,3] Five weeks after the execution of the will, the decedent was murdered.

Because Knight proffered only a copy of the decedent's will, the judge applied the evidentiary presumption that "where a will once known to exist cannot be found after the death of the testator, there is a presumption that it was destroyed by the maker with an intent to revoke it." *Miniter* v. *Irwin*, 331 Mass. 8, 9 (1954), quoting *Smith* v. *Smith*, 244 Mass. 320, 321 (1923). The judge concluded that Knight had failed to rebut the presumption, and dismissed his petition. Knight appealed, and the Appeals Court affirmed in an unpublished memorandum and order pursuant to its rule 1:28. *Knight* v. *Beauregard*, 73 Mass. App. Ct. 1127 (2009). We granted Knight's application for further appellate review and now affirm.

*Discussion.* When a will is traced to the testator's possession or to where he had ready access to it and the original cannot be located after his death, there are three plausible explanations for the will's absence: (1) the testator destroyed it with the intent to revoke it; (2) the will was accidentally destroyed or lost; or (3) the will was wrongfully destroyed or suppressed by someone who was dissatisfied with its terms. Restatement (Third) of

---

[1] Jeannine D. Beauregard, Lise Linehan, Johanne Knowlton, Claudine Beauregard, and Daniel Beauregard did not participate in the appeal and are not parties before us.

[2] On appeal, Raymound L. Beauregard (Beauregard) does not contest the judge's finding that the June 11, 2003, will was properly executed and was not a forgery.

[3] The will executed on June 11, 2003, by its terms revoked all wills previously made by the decedent. A copy of another will executed two days earlier, on June 9, 2003, was also entered in evidence. The June 9 copy is identical to the June 11 copy offered for probate, except that it was not signed by two witnesses as required by G. L. c. 191, § 1.

Property (Wills and Other Donative Transfers) § 4.1 comment j (1999). Of these, Massachusetts law presumes the first — that the testator destroyed the will with the intent to revoke it. *Smith* v. *Smith, supra* ("It is settled law that where a will once known to exist cannot be found after the death of the testator, there is a presumption that it was destroyed by the maker with an intent to revoke it"). See *Gannon* v. *MacDonald*, 361 Mass. 851 (1972); *Miniter* v. *Irwin, supra*; *Coghlin* v. *White*, 273 Mass. 53, 55 (1930); *Aldrich* v. *Aldrich*, 215 Mass. 164, 170 (1913), and cases cited. See also Restatement (Third) of Property (Wills and Other Donative Transfers), *supra*; 3 W. Page, Wills § 29.139 (Bowe-Parker rev. 2004).[4] Knight argues that the presumption should not apply in this case because the will opponents failed to raise it in their pleadings or at trial. The argument is without merit. For more than one century we have recognized the presumption as evidentiary, not an affirmative defense that must be pleaded or otherwise invoked by the opponents. See *Aldrich* v. *Aldrich, supra*; *Newell* v. *Homer*, 120 Mass. 277, 281 (1876). See 3 W. Page, Wills, *supra* at § 29.139, at 845 ("if a will which was in the custody of testator, or to which he had ready access cannot be found, the burden of proof is upon the proponent to show that it was not destroyed by testator with the intention of revoking it"). Knight knew he did not have the original will; he was on fair notice that the presumption would

---

[4]Our cases have not always stated explicitly that the presumption arises only when a will that cannot be located after the testator's death can be traced to the testator's possession or control. See, e.g., *Miniter* v. *Irwin*, 331 Mass. 8, 9 (1954) (stating generally that "where a will once known to exist cannot be found after the death of the testator, there is a presumption that it was destroyed by the maker with an intent to revoke it"). However, the facts and reasoning of our cases suggest that this is the case. See *Aldrich* v. *Aldrich*, 215 Mass. 164, 170 (1913) (noting neither party claimed that will "ever had been taken from the testator's possession" before applying presumption of revocation). See generally Restatement (Third) of Property (Wills and Other Donative Transfers) § 4.1 comment j (1999) (presumption arises if "a will is traced to the testator's possession and cannot be found after death"); 3 W. Page, Wills § 29.139 (Bowe-Parker rev. 2004) (presumption arises if will "known to have been in existence during testator's lifetime, and in his custody, or where he had ready access to it, cannot be found at his death"). If the will is last traced to a relative, for example, and cannot be located after the testator's death, it may be equally plausible that the relative destroyed or lost the will; an inference that the decedent revoked it is not well founded in such circumstances.

apply. *Newell* v. *Homer, supra* (presumption "always arises when a will once known to exist is not found at the death").

Whether the presumption is overcome in a given case "presents a question of fact," *Miniter* v. *Irwin, supra*; see *Gannon* v. *Mac-Donald, supra*, that we will not reverse unless it is clearly erroneous. See *Miniter* v. *Irwin, supra* at 10; *Coghlin* v. *White, supra*. The presumption may be rebutted by a preponderance of the evidence. See Restatement (Third) of Property (Wills and Other Donative Transfers), *supra*. Cf. *Andrews, petitioner*, 449 Mass. 587, 591 (2007); *Baker* v. *Parsons*, 434 Mass. 543, 554 n.18 (2001) (in "absence of a statutory provision to the contrary, the preponderance of evidence standard is the standard generally applied in civil cases"). Because of "the other plausible explanations for a will's absence," the presumption should not "be such a strong one" that clear and convincing or another higher burden is required to rebut it. Restatement (Third) of Property (Wills and Other Donative Transfers), *supra*.[5]

Accordingly, the proponent of a will that has been traced to the testator's possession (or to which the testator had ready access) but cannot be found after his death must demonstrate by a preponderance of the evidence that the testator did not destroy the will with the intent of revoking it. Whether the evidence is sufficient to meet this burden is determined by the facts and circumstances in each case. See *Matter of the Estate of Leggett*, 584 So. 2d 400, 403 (Miss. 1991), quoting *Adams* v. *Davis*, 233 Miss. 228, 238 (1958) ("It is difficult to lay down any general rule as to the nature of the evidence which is required to rebut the presumption of destruction"). It is not necessary that the proponent establish that the will was in fact accidentally lost or destroyed, or that it was wrongfully suppressed by someone who was dissatisfied with its terms. The presumption is rebutted

---

[5]Some jurisdictions require a more stringent standard of proof to rebut the presumption. See, e.g., *Matter of the Estate of Crozier*, 232 N.W.2d 554, 556 (Iowa 1975) (whether presumption of revocation has been rebutted "is one of fact which must be proved by clear and convincing evidence"); *Bowery* v. *Webber*, 181 Va. 34, 36 (1943) (evidence required to overcome presumption of revocation of will must be "strong and conclusive"). We have not previously had occasion to state that a preponderance of the evidence is the standard of proof by which the presumption of revocation may be rebutted under Massachusetts law. We follow the Restatement (Third) of Property (Wills and Other Donative Transfers), *supra*, on this point, for the reasons explained.

if a preponderance of the evidence demonstrates that the testator did not intend to revoke his will, regardless of whether the proponent can demonstrate what may ultimately have become of the will.

In this case, the judge concluded that he "could not draw any inference that the will was accidentally lost by the decedent." We do not read this to mean that the judge required Knight to prove what had become of the original or that the judge did not consider evidence tending to show that the deceased did not destroy the will with the intent to revoke it. It is apparent that the judge considered all the evidence and made findings sufficient to support his conclusion. The judge first reasoned that the decedent was young, healthy, and fully competent at the time of his death, so it would have been unlikely that he would have lost the original will accidentally. The judge further noted that there was a short period of time between the date on which the will was executed (June 11, 2003) and the decedent's death (July 19, 2003). Presumably, the judge reasoned that there was little time for the decedent to lose his will or to give it to someone who suppressed or destroyed it against the decedent's wishes. Both factors the judge cited — the competency of the decedent and the temporal proximity of the creation of the will and the decedent's death — support his finding that the decedent destroyed the original will intending to revoke it. We read the judge's decision to mean that the will proponent had not overcome the presumption by a preponderance of the evidence.

This is not to say that the facts in this case could not have been weighed differently. A copy of the will was discovered in the decedent's home. If he were competent, as the judge found, then he likely would have destroyed any copies, as well as the original, had he intended to revoke the will. Also, the temporal proximity between execution of the will and death provided little time for the decedent to change his mind. However, it is "not enough to show that a different conclusion might well have been reached." *Smith* v. *Smith*, 244 Mass. 320, 321 (1923). Our examination of the evidence does not lead to the inevitable conclusion that the judge's findings, based on his view of the evidence and his evaluation of the witnesses' credibility, are clearly erroneous. *Gannon* v. *MacDonald*, *supra* at 852.

*Decree affirmed.*